Mr. Lee, when you are ready, please be sure you speak up so that we will all hear you. You still need to actually speak up even a little bit more than you are. My name is Harry Lee. I represent Johnny Watkins, the guardian of the estate of her... Once more, could I ask you to speak up loudly, please? Sure. We won't mind if you think you're shouting at us, because it probably won't seem that way to us. But anyway, we understand you represent the mother of Jenice Ford. Jenice Ford, who is an adult and she is a disabled individual. I'll ask you a question, if I might. Do you have a good faith basis for an argument that the 2010 complaint was not filed with Ford's knowledge and approval, or not filed on her behalf? My answer to that is I do not know. I do not know from the record in this case. What I can say from the record in this case is that pleading, the 2010 pleading, does indicate that Ms. Ford suffered from brain damage. That's included in the complaint. So if that could form a basis, a good faith basis for saying that she was not aware, then I would think it's within the context of the complaint itself. But if you're asking me personally if I do know, I do not know. But the problem with that is that brain damage describes too many different conditions. I mean, somebody could be impaired and yet still able to communicate to a lawyer who would then take things the next step and file a complaint. You wouldn't want this person running her own bank account or other things, but she could communicate enough. So there's this big middle ground. And just the fact that there's a reference to mental impairment doesn't really tell us enough. I mean, the government has said there is this statute of limitations that applies to Federal Tort Claim Act cases, and this is so far outside the statute. Well, of course, there is more within the pleading, both the pleading of the current action in federal court and the pleading in the Cook County action. And that additional information is that she was unable to, incapable of, managing her own person and her estate and her own personal affairs, and also that she needed 24-hour attention, around-the-clock attention. Which complaint is the one that says this? Actually, both complaints say that. I think it's clearer, certainly, in the 2015-2016 filings. And we're actually dealing with the First Amendment complaint filed in 2016. But it's contained in both the 2010 pleading and the 2016 pleading. So we do have that. And in addition to that, when the government argued in their motion to dismiss, or when they asked the district court to take judicial notice of the 2010 filing, we responded to that with a series of documents which further described the diminished mental capacity of Janice Ford from the moment of the surgery. But the obvious question about the 2010 filing is, if whatever arrangements happen to make that come into existence, why is it not also possible to notify the Department of Health and Human Services and to take the steps to present the present case? Zura can't have it both ways. Either she's competent enough, or even if she isn't, whoever is acting for her is then responsible for her. Although, of course, there's no formal appointment of a guardian until Ms. Watkins comes along. And I think that's the answer to that, that there was no formal appointment of Mrs. Watkins as her guardian until January of 2015. So who's bringing this 2010 suit? The lawyer? The 2010 suit was brought by the trial attorney on behalf of Janice Ford and Janice Ford's minor daughter. It was brought by that attorney on behalf of her. But as we've argued in our brief, there's really no indication of her awareness of that pleading aside from the pleading itself, and there is something contained within the pleading itself would at least raise a question regarding her awareness. And at the pleading stage, I think that's all we need to do. No. You do have to do more. Because the August 2010 filing establishes that Ford or, you know, someone on her behalf was in fact aware of the injury and there was a capability of asserting her legal rights. There's no allegation that she, that I could see that she did not in fact authorize the complaint. And of course, it's her burden to establish that the claim was timely filed and to assert that the 2010 complaint was not in fact filed at her, at Ford's behest. And so there's a, you know, there's a missing link here. Well, Your Honor, I come back to the allegations of that pleading and also not to be overlooked is the extensive documentation that was submitted in response to the motion to dismiss in this case. And that documentation shows a continuing diminished mental capacity from the moment of the medical treatment, which is alleged to be negligent here, up until the appointment of Mrs. Watkins as the guardian. We've got letters from the treating doctor in 2008. We've got letters from rehab case managers in the same year. We've got court records showing that Ms. Watkins was appointed guardian of all five of Johnny's Ford's children. We've got a letter from a rehab doctor in August of 2011, substantiating the longstanding mental deficiencies and the absolute poor prognosis of Johnny's Ford. So, but under your theory, it sounds like if somebody's very disabled, but there's no guardian, formal guardian out there, there really is no statute of limitations under the Federal Tort Claims Act, if the government, or for that matter, under anything else, but we'll stick with FTCA, because it's just always told until some representative gets appointed. But the 2010 litigation suggests that there's something wrong with that, and it's a disturbing theory that there's just no outer limit. I think it's disturbing that the court, that the district court is relying upon a pleading, which on its face indicates that Johnny's Ford is suffering from brain damage as a result. Well, she, I mean, but the court is also, the fact of the filing is not in dispute. There is a thing that is filed, and these are the words on it, and it suggests that, however informal it may have been, somebody, some lawyer is acting on her behalf, and that's where we, I think, really run into the problems. It is troubling, but again, we're dealing with a disabled individual here, and I think the focus should be on the disabled individual and on the rights of the disabled individual, and that's simply what we're urging here. Okay, why don't you save your last minute, and we'll hear from the government. Ms. North. May it please the court, counsel, the decision of the district court here was correct in dismissing this Federal Tort Claims Act case as time barred, because no administrative claim was filed within the two years from the claims accrual, as measured even at the latest by the 2010 complaint brought by Ms. Ford's counsel. If she was significantly disabled in 2010, even if she was capable of retaining an attorney to pursue the medical malpractice claim, if she was unable to oversee the attorney and pursue the claim, should the limitations period be told until she was confident to do so, or until a guardian was appointed for her? Your Honor, perhaps if that had been the case, and that had been pled, perhaps so. But here, there is no allegation, plausible or otherwise, that that was the case, that Ms. Ford had retained a counsel and then could no longer pursue the matter or needed a guardian. None of those things were pled in the complaint. None of those have even been said here today. As Mr. Lee said, he has no good faith basis upon which to state that Ms. Ford didn't actually retain the counsel, didn't consent to that retention, didn't know about the lawsuit or couldn't pursue the matter. But what he's talking about, though, is a tension, at least I'll say, between the allegations in the 2010 complaint about her impairments and the conclusion that this was a knowing and conscious act of hers that we should bind her to and say, well, that starts the two years for the tort claim proceeding as well. If she didn't have a clue what was going on, and I think that's possible, not everybody pays money to lawyers and goes and gets guardians. I think a lot of people, unfortunately, fall between the cracks and they don't do those sorts of things. So, I mean, what do we do with the fact that the allegations themselves don't give you a lot of comfort that this was a knowing act on her part? Well, Your Honor, the fact is that she did hire a lawyer, or a lawyer did pursue a claim. Well, we don't know. Somebody may have sent a lawyer her way. Someone may have sent a lawyer her way, but what we do know is that there was a lawsuit filed in her name and that lawyer's knowledge is imputed to the client, just like in any other case,  that that lawyer wasn't really her lawyer, So here's a problem of professional responsibility that has bothered me in other circumstances as well. We don't always insist for disabled people, which we'll assume she is, that there be a guardian, even a guardian ad litem, that the lawyer works with as the client. There are very many instances in which the lawyer is, in a sense, wearing two hats, a GAL hat, and the counsel hat, so the lawyer's asking him or herself, you know, well, what am I going to do? And here's this disabled client over there, and it's not a very good state of affairs, actually. That's what you have. Perhaps, Your Honor, I mean, it appears that there was no guardian appointed for Ms. Ford until 2015, but Ms. Ford did have a lawyer who did file a suit on her behalf, did pursue a claim at that time, and importantly, that claim was filed within the two-year window from the time when she was diagnosed with the injury here, at a time when, if that lawyer had instead filed an administrative claim under the FDCA, that claim would, the action then subsequently would not be time-barred for that reason. So she voluntarily, or somebody or other, voluntarily dismisses this 2010 suit, so nothing ever really happens in it. That's a little disturbing, too. I think, Your Honor, I'm not a state court practitioner, of course, but I think, Your Honor, that that's a typical thing that happens because under Illinois state law, as I understand it, the initial filing of the complaint in a tort case is sort of to get their hat in the ring, and then they have, if they voluntarily dismiss that case, they have another year to refile and not be barred, so they have sort of more time to investigate the allegations. So if there are no further questions, the United States asks this Court to affirm. Thank you. All right. Thank you very much. Mr. Lee, one last word. I'll try to keep it down. In response to the point you just made, Your Honor, about actually the short period in which this 2010 proceeding had been actually alive, it actually was voluntarily dismissed within three weeks. Now, the two cases that the district court relied upon were factually distinguished on this basis because in each of those cases the prior proceedings lasted for two years, and in particular in the Ward case, the court pointed out that the plaintiff, who was claiming that he had diminished mental capacity, participated in this litigation for two years, and the plaintiff was employed during this period. There is absolutely nothing in the record of this case to indicate any similar capability on the part of Johnny's Ward. All we have on the record of this case, and what was presented to the district court, are the pleadings in this case, the filing that the court took judicial notice of, and the documentation which the trial court, district court, apparently did not even consider in its ruling on this case. So I think essentially what we have is an unfair dismissal of a claim of a disabled party in this case. All right. Thank you very much. Thanks as well to the government. We'll take the case under advisement, and the court will be adjourned.